# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOPHIA ESTEBAN, an individual,<br><br>                               Plaintiff,<br>  vs.<br><br>UNITED STATES OF AMERICA, DEPARTMENT OF THE NAVY; and DOES 1-50, inclusive,<br><br>                              Defendant. | CASE NO. 13cv2025-GPC(NLS)<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Dkt. No. 17.] |

      Before the Court is Defendant United States of America's motion for summary judgment. (Dkt. No. 17.) Plaintiff filed an opposition on July 31, 2015. (Dkt. No. 21.) Defendant filed a reply on August 14, 2015. (Dkt. No. 22.) After a review of the pleadings, briefs, supporting documents, and the applicable law, the Court DENIES Defendant's motion for summary judgment.

## FACTUAL BACKGROUND

      On February 12, 2011, Plaintiff Sophia Esteban ("Esteban"), who was seventeen, and approximately six to eight of her friends walked aboard Naval Air Station North Island to attend the Centennial of Naval Aviation.[1] (Dkt. No. 21-3, P's Ex. D.) Plaintiff explained that the event promotes planes, new cars, and new technology for

---

[1] Plaintiff and her expert referred to the event as the Annual Speed Festival. (Dkt. No. 17-4, D's Ex. 2, Esteban Depo. at 9:20-10:5; Dkt. No. 21-3, P's Ex. A, Beels Decl. ¶ 3.)

cars. (Dkt. No. 17-4, D's Ex. 2, Esteban Depo. at 10:6-9.) She agreed with the characterization that the event was similar to an air show but with the addition of cars. (Id. at 10:12-17.) She heard about the event from her father. (Id. at 10:18-25.) The event was open to the public and she did not have to purchase a ticket to attend the event. (Id.)

After attending the event for a couple of hours, Plaintiff was walking with her friends toward the exit of the Naval Air Station North Island. (Id. at 8:24-9:1; 11:1-2.) As she was walking on the street towards the exit, she was looking to her side and behind her to talk to her friends. (Id. at 12:9-10; 15:6-12.) She turned around just in time to avoid walking into a pole. (Id. at 16:7-12.) While attempting to move to avoid the pole, she fell on the sidewalk and cut her leg on a piece of metal that resembled an electrical box that was attached to a pole. (Dkt. No. 21-1, SSUF No. 3.)

According to Plaintiff's expert, an "electrical junction box was mounted on a vertical conduit attached to a utility pole that was mounted on the sidewalk. The box was broken, with exposed sharp and jagged metal edges, and protruded about 4 to 5 inches from the pole." (Dkt. No. 21-3, P's Ex. A, Beels Decl. ¶ 3.) Subsequently, in March 2013, Defendant made repairs to the electrical box, and according to the work order, the project scope was to "REMOVE TRIP HAZARD/ELECTRICAL CONDUIT AND EXPOSED JUNCTION BOX, DEMO CONCRETE AND INSTALL FLUSH HANDHOLD TO ACCOMADTAE (sic) THE ENERGIZED POWER LINES. (Dkt. No. 21-3, P's Ex. C at 24[2].) The work order was designated as a "Priority 4 Emergency Minor" which informs the crew that it should respond within the hour to assess the situation. (Dkt. No. 17-6, D's Ex. 4, Bailey Decl. ¶¶ 10, 11.)

Plaintiff sustained a seven centimeter laceration on her left lower leg. (Dkt. No. 17-7, D's Ex. 5 at 3.) Her laceration was cleaned and treated with eleven stitches. (Id.) She was discharged with prescription for pain medication, crutches, and no PE for the week. (Id.)

---

[2]The page numbers are based on the CM/ECF pagination.

Plaintiff filed the instant complaint of negligence against the United States of America under the Federal Tort Claims Act. ("FTCA"). (Dkt. No. 1.) Defendant moves for summary judgment arguing that California's recreational use immunity bars Plaintiff's claim of negligence.

## DISCUSSION

**A.     Legal Standard for Federal Rule of Civil Procedure 56**

Federal Rule of Civil Procedure 56 empowers the Court to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every action." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325, 327 (1986). Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material when it affects the outcome of the case. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. <u>Celotex Corp.</u>, 477 U.S. at 323. The moving party can satisfy this burden by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element of his or her claim on which that party will bear the burden of proof at trial. <u>Id.</u> at 322-23. If the moving party fails to bear the initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 159-60 (1970).

Once the moving party has satisfied this burden, the nonmoving party cannot rest on the mere allegations or denials of his pleading, but must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" <u>Celotex</u>, 477 U.S. at 324. If the non-moving party fails to make a sufficient

showing of an element of its case, the moving party is entitled to judgment as a matter of law. Id. at 325. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In making this determination, the court must "view[] the evidence in the light most favorable to the nonmoving party." Fontana v. Haskin, 262 F.3d 871, 876 (9th Cir. 2001). The Court does not engage in credibility determinations, weighing of evidence, or drawing of legitimate inferences from the facts; these functions are for the trier of fact. Anderson, 477 U.S. at 255.

**B.     California's Recreational Use Immunity**

Defendant argues that the recreational use immunity, pursuant to California Civil Code section 846, is a complete bar to liability. Plaintiff contends that because she did not attend the event for recreational use, was an invitee to the event and the government's conduct was willful and malicious, Defendant is excepted from protection under California Civil Code section 846.

The FTCA makes the federal government liable to the same extent as private individuals under like circumstances in accordance with California law. 28 U.S.C. § 2674. In California, private landowners may not be held liable for injuries sustained by those who come onto their land for recreational purposes. Cal. Civil Code § 846. California Civil Code section 846 provides in relevant parts:

> An owner of any estate or any other interest in real property, whether possessory or nonpossessory, owes no duty of care to keep the premises safe for entry or use by others for any recreational purpose or to give any warning of hazardous conditions, uses of, structures, or activities on those premises to persons entering for a recreational purpose, except as provided in this section. . . .
>
> A "recreational purpose," as used in this section, includes activities such as fishing, hunting, camping, water sports, hiking, spelunking, sport parachuting, riding, including animal riding, snowmobiling, and all other types of vehicular riding, rock collecting, sightseeing, picnicking, nature study, nature contacting, recreational gardening, gleaning, hang gliding, private noncommercial aviation activities, winter sports, and viewing or enjoying historical, archaeological, scenic, natural, or scientific sites.
> . . . .

> This section does not limit the liability which otherwise exists (a) for willful or malicious failure to guard or warn against a dangerous condition, use, structure or activity; or (b) for injury suffered in any case where permission to enter for the above purpose was granted for a consideration other than the consideration, if any, paid to said landowner by the state, or where consideration has been received from others for the same purpose; or (c) to any persons who are expressly invited rather than merely permitted to come upon the premises by the landowner.
>
> Nothing in this section creates a duty of care or ground of liability for injury to person or property.

Cal. Civil Code § 846. Section 846 immunizes California landowners of two duties: "the duty to 'keep the premises safe' for recreational users, and the duty to warn such users of 'hazardous conditions, uses of, structures, or activities' on the premises." Klein v. United States, 50 Cal. 4th 68, 78 (2010). Under section 846, private landowners are afforded "a substantial measure of immunity from liability for injured incurred by those entering or using their land for recreational purposes." Termini v. United States, 963 F.2d 1264, 1265 (9th Cir. 1992).

**1.    Recreational Purpose**

Defendant argues that Plaintiff entered Naval Air Station North Island to attend the Speed Festival and whether she actively participated by test driving cars or simply was sightseeing, her attendance was a recreational purpose subject to section 846. In opposition, Plaintiff asserts that she did not enter the premises for a "recreational" purpose" but she attended the event as a military dependent for the Centennial of Naval Aviation.

The statute provides that a "recreational purpose" includes "activities such as fishing, hunting, camping, water sports, hiking, spelunking, sport parachuting, riding, including animal riding, snowmobiling, and all other types of vehicular riding, rock collecting, sightseeing, picnicking, nature study, nature contacting, recreational gardening, gleaning, hang gliding, private noncommercial aviation activities, winter sports, and viewing or enjoying historical, archaeological, scenic, natural, or scientific sites." Cal. Civil Code § 846. The list includes both passive and active activities, and

1 is not exhaustive. Ornelas v. Randolph, 4 Cal. 4th 1095, 1100-01 (1993).

2       While Plaintiff emphasizes that she attended the Centennial Naval Aviation rather than an event labeled by Defendant as the Speed Festival, this is a difference without a distinction. According to the newspaper article Plaintiff attached to her opposition, the Centennial Naval Aviation included activities, such as flight demonstrations which included aircraft from World War II to present day fighter, attack and transport aircraft; an appearance by the U.S. Navy parachute team; tours of ships were open to the public; 75 aircraft were on display, a motorcycle stunt show, live stage entertainment, a classic car show and a fun area for children that included bounce houses and other inflatable entertainment. (Dkt. No. 21-3, P's Ex. D.) Without any legal authority to the contrary, the Court concludes that the events at the Centennial Naval Aviation come within the definition of recreational purpose under section 846. The recreational use immunity applies unless one of the exceptions applies. Plaintiff argues that the express invitee exception and the willful conduct exception applies in this case.

**C.    Express Invitee Exception**

      Defendant argues that Plaintiff was a non-paying, uninvited recreational user when she entered Naval Air Station North Island to participate in the Speed Festival. Plaintiff contends she was invited to the premises to attend the Centennial of Naval Aviation as a military dependent.

      In Ravell, Norton Air Force base, a military installation that is normally closed to the general public, invited the public to enter the base to attend a free air show. Ravell v. United States, 22 F.3d 960, 961 (9th Cir. 1994). Members of the public were allowed to walk in closed parts of the base such as the flight line, where aircraft were often parked and tied down to hooks, which were very large steel eyelets that were embedded in the concrete of the flight line. Id. at 961. Plaintiff's son, who was stationed at the base, asked her to come and enjoy the show. Id. The plaintiff attended the air show and tripped over one of the hooks, fell and was injured. Id. The Ninth

1  Circuit affirmed the district court's grant of summary judgment to the United States
2  under California's recreational use statute. Id. at 963.
3      In determining whether the plaintiff was an express invitee to the air show, the
4  court explained that based on California Supreme Court law, there must be a "direct,
5  personal request" from the landowner to those that enter his/her property. Id. at 963
6  (citing Ornelas v. Randolph, 4 Cal. 4th 1095, 1100-09 (1993); Johnson v. Unocal
7  Corp., 21 Cal. App. 4th 310, 317 (1993)). Courts, in this circuit, have held that an
8  invitation to the general public to attend an air show on a military base does not
9  constitute an express invitation to a spectator who gets injured. Id.; see also Coryell
10 v. United States, 855 F. Supp. 1120, 1121-22 (C.D. Cal. 1994) (government's general
11 invitation to the public to attend air show at naval air station was not direct, personal
12 invitation to plaintiff under California's recreational use immunity statute exception
13 for express invitation). The Ninth Circuit also noted that a request from the plaintiff's
14 son, who was not authorized to make express invitations on behalf of the United States,
15 does not constitute an express invitation subject to the exception under section 846.
16 Id. at n. 3. In this case, Plaintiff does not provide facts that she received a direct,
17 personal invitation to attend the event by the government. She also provides no legal
18 authority that her status as a military dependent somehow created an express invitation
19 to the Centennial of Naval Aviation event. The Court concludes that Plaintiff has not
20 demonstrated a material issue of fact that the express invitee exception applies.
21 **D.    "Willful Misconduct" Exception**
22      Section 846 does not provide immunity for "willful or malicious failure to guard
23 or warn against a dangerous condition, use, structure or activity." See Cal. Civ. Code
24 § 846. "Willful or wanton misconduct is intentional wrongful conduct, done either
25 with a knowledge that serious injury to another will probably result, or with a wanton
26 and reckless disregard of the possible results." Charpentier v. Von Geldern, 191 Cal.
27 App. 3d 101, 113 (1987) (quoting O'Shea v. Claude C. Wood Co., 97 Cal. App. 3d
28 903, 912 (1979)). California courts apply a three part test to determine whether a

negligent act rises to the level of willful and malicious under section 846. Id. They are: "(1) actual or constructive knowledge of the peril to be apprehended, (2) actual or constructive knowledge that injury is a probable, as opposed to a possible, result of the danger, and (3) conscious failure to act to avoid the peril." Id. The Ninth Circuit has noted that when "willfulness is an issue, summary judgment should be granted with caution, since questions such as intent or motive are presented." Gard v. United States, 594 F.2d 1230, 1234 n.2 (9th Cir.), cert. denied, 444 U.S. 866 (1976). A plaintiff must allege specific facts to establish the three elements. Charpentier, 191 Cal. App. 3d at 114.

Plaintiff asserts that Defendant had constructive knowledge of the peril, constructive knowledge that an injury was probable under the circumstances; and consciously failed to act to avoid the peril. (Dkt. No. 21 at 4.) Defendant argues that it was not aware of the condition prior to Plaintiff's fall. (Dkt. No. 17-5, D's Ex. 3, Sandusky Decl. ¶ 14; Dkt. No. 17-6, D's Ex. 4, Bailey Decl. ¶¶ 9, 16-17.) It also contends that even if it had a duty of care, any breach of that duty would only rise to the level of negligence, not a willful or malicious intentional act.

**1.    Actual or Constructive Knowledge/Actual or Constructive Knowledge that Injury is Probable**

In California, constructive knowledge is measured by an objective standard "whether a reasonable man under the same or similar circumstances as those faced by the actor would be aware of the dangerous character of his conduct." Termini, 963 F.2d at 1268 (quoting Chappell v. Palmer, 236 Cal. App. 2d 34, 37 (1965)). The Ninth Circuit has stated that the lack of prior accidents is not dispositive. See id. at 1267 (lack of prior accidents does not mean a dangerous condition is not obvious). In addition, the Ninth Circuit has noted that "[t]he cases in which we have upheld a claim of willful misconduct under California law have all involved a hidden peril." Mattice

v. United States, 969 F.2d 818, 822 (9th Cir. 1992);[3] see also Coryell v. United States, 855 F. Supp. 1120, 1123 (C.D. Cal. 1994) (no prior occurrences and peril was open and obvious; therefore no evidence of willful misconduct under recreational use immunity).

The government's only argument that its conduct was not willful or malicious is that it was not aware of any prior incidents. The Ninth Circuit has held that lack of prior incidents is not dispositive. See Termini, 963 F.2d at 1269 (citing Lostritto v. S. Pac. Transp. Co., 73 Cal. App. 3d 737, 745 (1977)).

Whether the government had actual or constructive knowledge that injury was a probable, as opposed to a possible, is to be determined not by solely by the number of prior accidents but "by all of the circumstances." Lostritto v. S. Pac. Transp. Co., 73 Cal. App. 3d 737, 745 (1977). Such circumstances include "whether there were prior accidents". . . ; "defendant's knowledge that persons were engaged in recreational activity at the location" . . .; "and the location of the property itself." Manuel v. Pac. Gas & Elec. Co., 173 Cal. App. 4th 927, 946 (2009).

Defendant cites to the Manuel case arguing even if it had a duty, at most it was negligence. The court in Manuel concluded that because Pacific Gas & Electric Company ("PG&E") installed anti-climbing devices to stop climbers, and because a few of the devices were installed incorrectly, that would support a finding of negligence, not willful misconduct. Id. at 947. However, in this case, no attempts were made to warn or remove the danger of the exposed metal from the electrical junction box. In Manuel, a fourteen year old girl walked, with a friend, on a trail by her home and came upon a transmission tower owned by PG&E at 10:00 p.m. Manuel, 173 Cal. App. 4th at 930-31. The female climbed onto the tower facilitated by the anti-climbing guards, came in contact with a live transformer, was severely shocked, and fell. Id. at 931. She suffered burns on about 20 percent of her body and suffered severe

---

[3] However, subsequent district courts have held that an obvious peril does not necessarily mean that there can never be willful or malicious conduct. Singh v. United States, 718 F. Supp. 2d 1139, 1149 (N.D. Cal. 2010); Niva v. United States, No. 5:03–cv–0908 RS, 2004 WL 2217644, at *8 (N.D. Cal. Oct. 1, 2004), rev'd on other grounds by 245 Fed. Appx. 621 (9th Cir. 2007).

pulmonary injury, and died a week and a half later. Id. The court of appeal noted that there was no evidence of prior incidents, no evidence that anyone frequented the area, and the tower, itself, was in an isolated area. Id. at 946. The court concluded that the plaintiff failed to show that injury was probable and affirmed the trial court's grant of summary judgment for PG&E under section 846.

In opposition, Plaintiff raises an issue of fact as to whether the government had actual or constructive knowledge that injury is probable. First, Plaintiff's expert, Beels, asserts that the electrical junction box was a hidden peril. Beels states that the electrical junction box was not "open and obvious" because the condition was not visually conspicuous from Plaintiff's perspective as a pedestrian since her focus of attention would be on items of interest and toward the direction of travel. (Dkt. No. 21-3, P's Ex. A, Beels Decl. ¶ 7.) In addition, her view of the box may have been completely or partially blocked by other pedestrians or the pole itself. (Id. ¶ 7(c).)

Second, Beels asserts that the location of the electrical junction box with exposed sharp and jagged metal edges, protruding about 4 to 5 inches from the pole, was located in a heavily frequented area since it was in the ingress and egress path of the Speed Festival. (Id. ¶ 4.) Moreover, since the event was open to the public, Defendant knew that visitors would be engaged in recreational activity.

Based on the facts presented by Plaintiff, the Court concludes that she has raised an issue of material fact as to whether the government knew that injury was probable.

**2. Conscious Failure to Act to Avoid the Peril**

Plaintiff generally contends that Defendant consciously failed to act to avoid the peril. Defendant does not specifically address this factor. The fact that the condition of the broken electrical junction box was left to exist in a very populated area, without any warning or protections, creates a genuine issue of material fact as to whether the government consciously failed to act to avoid the peril. See Manuel, 173 Cal. App. at 948 (a conscious failure to act equates to doing nothing to warn).

Based on the facts presented by Plaintiff, the Court concludes there are triable

issues of fact as to whether there was a "willful or malicious failure to guard or warn against a dangerous condition, use, structure or activity" by the government. Accordingly, the Court DENIES Defendant's motion for summary judgment.

## Conclusion

Based on the above, the Court DENIES Defendant's motion for summary judgment. The hearing set for September 4, 2015 shall be **vacated.**

IT IS SO ORDERED.

DATED: August 27, 2015

HON. GONZALO P. CURIEL
United States District Judge